IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILBERT SENADOR | : | CIVIL ACTION |
| | : | NO. 07-4144 |
| v. | : | |
| | : | |
| ZOBER INDUSTRIES, INC. | : | |
| | : | |

O'NEILL, J.                                                April 28, 2009

<u>MEMORANDUM</u>

On October 3, 2007, plaintiff Wilbert Senador filed a complaint against defendant Zober Industries, Inc. alleging race and national origin discrimination, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and race discrimination and hostile work environment in violation of 42 U.S.C. § 1981. Presently before me are defendant's motions for summary judgment on plaintiff's claims and on plaintiff's request for punitive damages, plaintiff's response and defendant's reply thereto.

BACKGROUND

Plaintiff Senador is of Filipino descent. On referral from his parents, both of whom were employed by defendant, plaintiff initially was hired by defendant Zober in April 1992 as a mechanical assembler in defendant's electrical department. Plaintiff's brothers, Roberto Senador, Jr. and Albert Senador, also worked for defendant. Plaintiff assembled printed circuit boards in the electronics department on the second shift, from 3:30 p.m. to midnight.

On or about September 21, 1992, defendant hired Matthew Philipose as Production Manager. Philipose is of Indian descent. Philipose oversaw the electronics departments and became plaintiff's immediate supervisor.

On November 16, 2001, plaintiff voluntarily ended his employment with defendant, claiming that Philipose would not allow him time off to travel to the Philippines to visit family. In February 2002, Philipose rehired plaintiff.  On October 11, 2005, upon plaintiff's recommendation, Philipose hired plaintiff's wife Nova Marie Senador to work in defendant's electronics department.

Plaintiff testified that Philipose called him a stupid, lazy Filipino weekly from 2002 until his termination in 2007.  Furthermore, plaintiff asserts that Philipose often criticized his accent, laughed at him when he spoke and told him that he could not understand his accent.  Plaintiff alleges that Philipose refused to call him by his name and instead referred to him as "hey Filipino."

Albert Senador, a former employee of defendant and plaintiff's brother, testified in his deposition that Philipose would always say that Filipinos are stupid, lazy and that he and his brother were Filipinos with "big body small brain."  He testified that he heard Philipose make these statements weekly.  He was employed by defendant from April 7, 1992 to October 1994 and from his rehire on February 4, 2003 until his termination in 2004.

Ricardo Perez, a former employee of defendant, also testified in his deposition that he once heard Philipose call plaintiff a stupid Filipino.  He testified that he had forgotten to clock in or out on his timecard on several occasions and that Philipose would fix it for him once he told Philipose.  He also testified that he recalled plaintiff forgetting previously and going to Philipose as well.  Perez testified that he never saw Philipose scream at Indians but that Philipose would scream at plaintiff in front of him.

2

Plaintiff testified that John Antony,[1] an employee of Indian descent, was paid more money when he was re-hired in 2005 as a part-time employee at $13.00 an hour while plaintiff was paid less.  Plaintiff also alleges that he was denied a promotion by Philipose in 2005 for a Surface Mount Machine (SMT) Operator position.  Philipose promoted Antony instead.

On January 15, 2007, plaintiff asserts that he received a phone call from his wife informing him that their daughter was ill so, in a panic, he left work hastily to care for his daughter and forgot to clock out.  He avers that he had never left the defendant's premises without clocking out before January 15, 2007.  John Antony called plaintiff and told him that Philipose wanted him to return to company premises.  Upon his return, Philipose showed him his time-card and asked him what happened.  Plaintiff asserts that he tried to tell Philipose what happened but that Philipose would not let him explain.  Philipose asked if he had done this previously and plaintiff allegedly told him no.  Plaintiff also alleges that Philipose said "you Filipino people, you think you're smart, but you don't have no brain."  John Antony was there for some of the conversation.  The conversation ended with Philipose telling plaintiff to go and that they would talk about it the next day.

On January 16, 2007, plaintiff was summoned to speak to Philipose regarding the previous day's events.  Plaintiff alleges that Philipose would not let him explain and terminated him.  Plaintiff admits that he knew that leaving company premises without punching out was a violation of defendant Zober's rules and regulations.  Plaintiff claims that, in other cases where an employee left defendant's premises without clocking out, Philipose did not discipline the

---

[1]  The record refers to John Antony as John Kennedy at times.  Based on the arguments in the briefs, it appears that this is the same person and I will hereinafter solely refer to him as John Antony.

employee but instead merely initialed the employee's timecard to approve their time.  At the time

of his termination, plaintiff alleges that he was told to sign a document that indicated that he had

left defendant's premises on prior occasions or he would not receive his final paycheck.  Plaintiff

claims that he objected to the document's contents but reluctantly signed it.  Defendant's version

of the conversations that occurred on January 15, 2007 and January 16, 2007 differ from

plaintiff's.

Finally, plaintiff testified that the above events caused him depression and problems

sleeping.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that

summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of material fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Summary judgment will be

granted "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are

no genuine issues of material fact.  Id. at 322-23.  If the moving party sustains the burden, the

nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial.  See

Anderson, 477 U.S. at 255.  Rule 56(e) provides that when a properly supported motion for

4

summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), quoting Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

Plaintiff alleges that defendant discriminated against him on the basis of his race and national origin under Title VII and on the basis of his race under § 1981 through denial of a promotion and pay increases and wrongful termination.  Plaintiff also argues that defendant created a hostile work environment on the basis of his race and national origin in violation of Title VII and on the basis of his race in violation of § 1981.  Additionally, plaintiff alleges that defendant retaliated against him for engaging in protected activity under Title VII.  Finally, plaintiff argues that he is entitled to punitive damages under Title VII and § 1981.

I.      Race and National Origin Discrimination

Plaintiff filed a claim for race and national origin discrimination under Title VII and race discrimination under § 1981.  Title VII cases are governed by the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The elements of a § 1981

5

discrimination claim are identical to those for a similar claim under Title VII.  Schurr v. Resorts Int'l Hotel Inc., 196 F.3d 486, 499 (3d Cir. 1999).

Under McDonnell Douglas, plaintiff must first satisfy the burden of proving by a preponderance of the evidence a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To establish a prima facie case of discrimination, plaintiff must show that:  (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action despite being qualified; and (4) that the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.  Waldron v. SL Indus., Inc., 56 F.3d 491, 494 (3d Cir. 2005); see Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Plaintiff may demonstrate the fourth element of his prima facie discrimination case by showing that the employer treated a similarly-situated employee who is not within the protected class differently than plaintiff.  See Jones, 198 F.3d at 410-11.  To show such unequal treatment, plaintiff must "set forth evidence to establish that he was treated differently from . . . his coworkers for similar disciplinary infractions."  Nicholson v. Bradley Graphic Solutions, Inc., 2004 WL 870692, at *4 (E.D. Pa. Apr. 22, 2004); quoting Davis v. City of Phila. Water Dep't, 2001 WL 1390750, at *3 (E.D. Pa. Nov. 7, 2001).  "To be deemed 'similarly situated,' the individuals with whom a plaintiff seeks to be compared must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Kimble v. Morgan Properties, 2004 WL 2536838, at *3 (E.D. Pa. Nov. 8, 2004), quoting Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994), internal citations omitted.

6

Plaintiff may also satisfy the fourth element by showing other circumstances that give rise to an inference of unlawful discrimination.  See Wooler v. Citizens Bank, 2008 WL 877168, at *2 (3d Cir. Apr. 2, 2008), finding that the plaintiff need not show that a similarly-situated person from outside her protected class was hired; it would be sufficient to show that the position was held open with advertisements for individuals with qualifications similar to the plaintiff's; Sarullo, 352 F.3d at 798, finding that the plaintiff need not necessarily establish that similarly-situated employees were rehired but "he must establish some causal nexus between his membership in a protected class and the decision to not rehire him."  For example, my colleague Judge Green has held that allegedly discriminatory comments were sufficient for a jury to find an inference that plaintiff's termination was based on his race.  Greene v. Turf Club Services, Inc., 2000 WL 19624, at *2-3 (E.D. Pa. Jan. 13, 2000).

If plaintiff succeeds in proving the prima facie case, the burden shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  McDonnell Douglas, 411 U.S. at 802.  If defendant comes forward with such reasons, then the burden shifts back to plaintiff to prove that the legitimate reason proffered by defendant were pretextual. McDonnell Douglas, 411 U.S. at 804.  At all times, the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains with plaintiff.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799 n.10 (3d Cir. 2003); Burdine, 450 U.S. at 253.

A.    Promotion and Pay Increases

Defendant claims that plaintiff cannot establish a prima facie case for discrimination based on being denied promotions or equal pay increases because of his race or national origin. Even assuming that plaintiff satisfies the first three elements of his prima facie case, he fails to

present any evidence of circumstances that would give rise to an inference of unlawful discrimination to satisfy the fourth element of his prima facie case.  The evidence that plaintiff provides is his testimony comparing himself to John Antony, an Indian employee, who received a promotion to SMT operator for which plaintiff believes himself to be qualified and a pay disparity when Antony was re-hired in 2005 and paid more on an hourly basis than plaintiff was paid at that time.

However, plaintiff fails to establish that Antony was similarly situated when he was rehired and promoted.  He does not refute that Antony was a part-time employee without benefits while he was a full-time employee.  Plaintiff also admits in his deposition that Antony left to go to school so that he could earn more money when he returned.  Therefore, he has not established that a similarly-situated individual was paid more to show that he was treated differently for pay increases.  Plaintiff has provided no other evidence of pay disparities based on race or national origin.

Additionally, the only evidence that plaintiff provides to support his allegation that he was denied a promotion because of his race or national origin was his testimony that Antony was promoted to SMT instead of him when plaintiff believed that he was better trained and more qualified than Antony.  However, defendant presented evidence that Antony had more education than plaintiff, particularly with computers, that computer skills are preferred in an SMT operator and that Antony was promoted after returning to defendant following additional schooling.  Plaintiff does not refute this evidence.  Therefore, plaintiff fails to establish that a similarly-situated individual outside his protected class was promoted when he was not promoted so as to establish an inference of discrimination.  Thus, defendant's motion for summary judgment on

8

plaintiff's discrimination claims based on denial of promotions and pay increases will be granted.

      B.    <u>Termination</u>

It is undisputed that plaintiff satisfies the first three elements of a prima facie case of discrimination regarding his discharge. Plaintiff is a member of a protected class given that he is "Philippine in origin and Asian in race."[2] Further, defendant concedes that plaintiff was qualified for the position by performing his job satisfactorily and that he suffered an adverse employment action when he was terminated. The parties do, however, disagree as to whether plaintiff raises an inference of discrimination in order to fulfill the fourth element of his prima facie case.

Plaintiff argues that he satisfies this element for his claims of both race and national origin discrimination by showing that he was disciplined more severely than Ricardo Perez, a Puerto Rican employee who engaged in similar conduct. Perez testified that he had previously left work without clocking out and was not terminated or disciplined. When this happened, he testified that he would tell Philipose and Philipose would fix his timecard. Perez testified that he also witnessed other employees leaving without clocking out and that they were not disciplined; instead, Philipose signed their cards so they could be compensated for their time. Plaintiff fails to identify these employees. Plaintiff also argues that an inference of discrimination exists via direct evidence because, at the time of his termination, as he attempted to explain the reason he did not clock out to Philipose, Philipose allegedly made the discriminatory comment "you

_____

[2] Plaintiff describes his race as Filipino but his race is Asian. The Equal Employment Opportunity Commission has identified six categories of race: (1) Hispanic or Latino; (2) White; (3) Black or African American; (4) Native Hawaiian of Other Pacific Islander; (5) Asian; and (6) American Indian or Alaska Native. EEOC Instruction Booklet for EEO-1 Report. The Asian category is defined as "[a] person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, . . . India, . . . the Philippine Islands . . . ." <u>Id.</u> at 7.

Filipino people think you're smart, but you don't have no brain."

Defendant contends that plaintiff has produced no evidence to support his claim that "non-Asians and/or non-Filipinos" were treated more favorably than he was because his evidence consists only of testimony that other employees, specifically Perez, forgot to clock in or out and that Philipose signed their time cards when they told him.  Defendant argues that this is unlike plaintiff's situation because he was caught by Philipose when he did not clock out.  Defendant also alleges that plaintiff, a Filipino, and Philipose, an Indian, are of the same race and therefore are of the same protected class, thereby substantially weakening any inference of racial discrimination.

Plaintiff satisfies the fourth element through his deposition testimony that Philipose allegedly made comments connected to his national origin and specifically made one at the time of his termination which may create an inference that he was fired because of his national origin. See Greene, 2000 WL 19624, at *3; Oh v. Engelhard CLCL, Co., 2007 WL 1296714, at *4 (D. N.J. Apr. 30, 2007), finding that the plaintiff established a prima facie case with his allegation that his supervisor repeatedly and consistently made discriminatory comments regarding his age, i.e. "Old Man," and national origin, i.e. "f Korean."  As the comments here reference only plaintiff's national origin, this evidence does not satisfy the fourth element for his racial discrimination claim.  Moreover, the evidence that plaintiff provides to show that other employees were treated differently when they forgot to clock in or out is insufficient to provide an inference that he was fired based on his race or national origin.  These employees are not similarly situated because plaintiff fails to provide an example of an employee who left during his shift and forgot to clock out who was caught by Philipose before he could tell Philipose about

10

his timecard error.  Plaintiff provides no evidence that Philipose approached any employee about

a failure to clock in or out, any evidence that he was aware of any employee who left without

clocking out without being told by the employee first or of any employee leaving during a shift

without clocking out who Philipose disciplined differently.  This evidence therefore is not

sufficient to satisfy the fourth element for his racial discrimination claim.  Thus, he satisfies the

fourth element for his national origin claim only.[3]

Because plaintiff has successfully demonstrated his prima facie case for his claim of

national origin discrimination, the burden shifts to defendant to "articulate some legitimate,

nondiscriminatory reason" for the employment decision.  McDonnell Douglas, 411 U.S. at 802.

This "relatively light" burden requires defendant to introduce evidence which if taken as true

would permit the conclusion that there was a nondiscriminatory reason for the challenged action.

Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  Defendant contends that plaintiff was

terminated because he violated defendant Zober's Rules and Regulations by leaving company

premises during his shift without clocking out on January 15, 2007 and on numerous occasions

over at least three or four months.  Philipose testified in his deposition that, for about three or four

months prior to the January 15, 2007 incident, he noticed that plaintiff was not finishing enough

work and that he was often not able to find him during his shift.  He testified that he had doubts

about the responses plaintiff gave when he asked what was happening.  Because of this suspicion,

Philipose watched plaintiff and caught him leaving company premises during his shift without

punching out on January 15, 2007.  Philipose testified that, when he noticed plaintiff was gone, he

---

[3]  Because plaintiff fails to present any evidence of racial discrimination, I need not
address the significance of defendant's argument that Philipose and plaintiff are both Asian.

asked John Antony to call him and ask him to return.  Philipose and Antony testified that when plaintiff returned he admitted that he had been leaving during his shift without clocking out for a few months.  After discussing the situation with defendant Zober's owner and general manager, it was decided that, because plaintiff was repeatedly falsifying his time card, he should be terminated.  Defendant's evidence that it terminated plaintiff for his violation of company policy is sufficient to satisfy its burden of demonstrating that it had a legitimate, nondiscriminatory reason for terminating plaintiff's employment.

Because defendant has established a legitimate, non-discriminatory reason, plaintiff must have the opportunity to demonstrate by a preponderance of the evidence that the reasons offered by defendant are merely pretext for discrimination.  McDonnell Douglas, 411 U.S. at 804.  To show that an employer's reasons are pretextual, plaintiff must point to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes, 32 F.3d at 764; see also Atkinson v. La Fayette College, 460 F.3d 447, 454 (3d Cir. 2006).

To discredit the employer's proffered reason under the first Fuentes prong, plaintiff cannot simply show that the employer's decision was wrong or mistaken since the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent.  Fuentes, 32 F.3d at 765.  Rather, the nonmoving party must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer's proffered legitimate reason for its action that a reasonable fact finder could rationally find them unworthy of credence, and hence infer that the employer did not act for the

asserted nondiscriminatory reasons.  Id., internal citations omitted.

Under the second Fuentes prong, plaintiff could establish that defendant's proffered reason was pretextual by showing that an "invidious discriminatory reason was in fact, more likely than not a motivating or determining cause of his termination."  Fuentes, 32 F.3d at 764.  To do so, plaintiff may show that the employer has previously discriminated against him, that the employer has previously discriminated against other members of the protected class or another protected class or that defendant has treated more favorably similarly-situated people not within the protected class.  See, e.g., Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998).  Plaintiff might also "show pretext with overt evidence of discriminatory animus or indirect evidence of an ulterior actionable motive for the adverse employment action."  Ahmed v. Lowe's Co. Inc., 2008 WL 2967061, at *6 (E.D. Pa. July 31, 2008).  "Discriminatory comments by non-decisionmakers, or statements temporally remote from the decision at issue, may be properly used to build a circumstantial case of discrimination."  Id., citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1214 (3d Cir. 1995).

Plaintiff argues that defendant's proffered reason for his termination is implausible, inconsistent, incoherent and contradictory.  First, plaintiff argues that Philipose admitted that he has never disciplined or terminated any employee for failing to keep an accurate time card or for leaving the company premises without clocking out.  However, as discussed above, plaintiff fails to provide any evidence that Philipose ever caught another employee that failed to clock out when he left during his shift.  The only evidence that plaintiff presents is testimony that Philipose was aware of those who forgot to clock in or out at the beginning or end of their shift, respectively, through the employee asking Philipose to sign their timecard.  Plaintiff provided no evidence that

13

Philipose approached any other employee about a falsification on their timecard.  Thus, this evidence cannot show that defendant's reason was inconsistent when there is no evidence that Philipose treated other employees to the contrary.

Plaintiff also argues that pretext is shown by defendant's failure to follow its own progressive discipline policy.  He alleges that he should have been given written warnings prior to termination for his falsification of a timecard.  Plaintiff also testified that, during the last four years of his employment, Philipose referred to him as a "stupid, lazy Filipino" weekly.  While these comments may be as defendant alleges temporally attenuated from the decision to terminate plaintiff, a similar discriminatory comment was allegedly made at the time of his termination.  Philipose testified that he did not make these comments.  However, as a whole these comments create a genuine issue of material fact and provide sufficient evidence for a jury to determine that plaintiff's termination was motivated by discrimination.  See Greene, 2000 WL 19624, at *3.

Moreover, plaintiff argues that Philipose refused to let him explain the reasons for his conduct, i.e. that he had to take his daughter to the hospital.  Defendant presented evidence of subpoenaed Frankford Hospital records pertaining to plaintiff's daughter that do not indicate that she visited the hospital on January 15, 2007.  Although plaintiff has not provided any evidence to the contrary, defendant's evidence does not directly refute plaintiff's contention that he tried to provide this reason to Philipose.  The evidence instead challenges the validity of plaintiff's excuse.  The medical records were not obtained until discovery and defendant does not argue that it considered the validity of plaintiff's alleged excuse in terminating him.  Instead, defendant claims that plaintiff did not provide such an excuse.  However, if believed, a reasonable jury could find that plaintiff's alleged attempt to explain this reason to Philipose and defendant's failure to

14

investigate it before terminating him supports that defendant's reason for terminating plaintiff's employment was pretextual.

Also in dispute is whether plaintiff admitted to leaving without clocking out for many months when he was confronted by Philipose on January 15, 2007.  Plaintiff testifies differently regarding the conversations surrounding his termination.  He testified that he never made such an admission and that he never left during his shift without clocking out but that he was forced to sign the termination document stating that he had in order to get his paycheck.  Defendant refutes this with deposition testimony from Philipose and Antony that plaintiff did admit that he was doing this for months.  However, plaintiff's evidence, if believed, casts doubt on defendant's proffered reason.

All of the above evidence, when viewed in the light most favorable to plaintiff, is sufficient to allow a reasonable jury to conclude that defendant's reason is pretext and that national origin discrimination was the motivating factor in plaintiff's termination.  Therefore, I will deny defendant's motion for summary judgment on plaintiff's claim for national origin discrimination and will grant defendant's motion for summary judgment on all of plaintiff's other claims of discrimination.

II.      Hostile Work Environment

Plaintiff alleges that defendant created a hostile work environment under Title VII based on his race and national origin and under § 1981 based on his race.  The elements of a hostile work environment claim under § 1981 are the same as the elements for a hostile work environment claim under Title VII.  Ocasio v. Lehiah Valley Family Health Ctr., 92 Fed. Appx. 876, 879-80 (3d Cir. 2004).

To establish a hostile work environment claim, plaintiff must show that:  (1) he suffered intentional discrimination because of race and/or national origin; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of vicarious or respondeat superior liability.  Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).  In evaluating a hostile work environment claim, I must consider the totality of the circumstances, rather than just individual incidents, and must be mindful that isolated incidents, unless extremely serious, and offhand comments are not sufficient to sustain a claim.  Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).  These circumstances may include the frequency of the allegedly discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).  Generally a plaintiff cannot rely upon casual, isolated or sporadic incidents to support his claim of a hostile work environment. Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990); Harris, 510 U.S. at 20.  Conduct that is merely offensive or which has the effect of making an employee's life at work unpleasant or uncomfortable is without more not actionable.  Id. at 21-22.  Likewise, "mistreatment that is not motivated by the plaintiff's protected class does not create a hostile work environment." Gharzouzi v. Northwestern Human Services of Penn., 225 F. Supp.2d 514, 534 (E.D. Pa. 2002). However, "the advent of more sophisticated and subtle forms of discrimination requires that [I] analyze the aggregate effect of all evidence and reasonable inferences therefrom, including those concerning incidents of facially neutral mistreatment in evaluating a hostile work environment

claim."  Cardenas, 269 F.3d at 261-62.

Defendant argues that plaintiff fails to establish a hostile work environment claim under §

1981 and Title VII.  In support of his claim, plaintiff presented evidence that Philipose referred to

Filipinos as stupid, lazy and without brains.  Plaintiff testified in his deposition that Philipose

made these comments to him and to fellow Filipino co-workers weekly and that Philipose called

him "hey, Filipino" rather than by his name.  Ricardo Perez and Albert Senador provide similar

testimony in their depositions.  Plaintiff testified that Philipose made fun of his accent.  Plaintiff

also testified that he and his fellow Filipino co-workers were watched more closely by Philipose

during their shifts and yelled at more frequently and in front of their co-workers when non-

Filipino employees who were taken into Philipose's office to discuss their mistakes.  This

evidence refers solely to discrimination against his national origin as Filipino and not as to his

race.  Plaintiff fails to present any evidence of harassment based on his race and I will therefore

dismiss his claims for a hostile work environment based on his race.

The evidence that plaintiff presents consists of comments that implicate his national

origin.  Although some of the comments referencing his national origin may not appear

discriminatory when considered separately, such as being called "hey Filipino," the evidence as a

whole includes weekly referrals to Filipinos as stupid or lazy which would allow a reasonable jury

to conclude that the acts were regular and pervasive and motivated by a discriminatory purpose.

See Cardenas, 269 at 261-62.  Reviewing this evidence in the light most favorable to plaintiff,

assuming that plaintiff's allegations regarding Philipose's comments and conduct are true and

resolving all reasonable inferences in his favor, I find that he has presented sufficient evidence to

satisfy the first and second prong of his hostile work environment claim based on his national

origin.[4]

Moreover, plaintiff testified that he was determinably affected by the work environment.

"Such effects may include being forced to resign or suffer emotional trauma, but serious

psychological harm" and economic effects are not required.  Koschoff v. Henderson,109 F.

Supp.2d 332, 348 (E.D. Pa. 2000), citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22

(1993).  Plaintiff testified that he experienced depression and trouble sleeping for which he took

over-the-counter medication.  Additionally, there is adequate evidence of the alleged conduct, that

if believed, a jury could conclude that a reasonable Filipino person would have been affected in

the same way.

Defendants do not argue that there is no basis for vicarious liability, the fifth prong of a

prima facie case of a hostile work environment claim.  An employer is vicariously liable to a

plaintiff for a hostile work environment created by a supervisor with immediate authority over the

plaintiff that results in a tangible employment action such as discharge.  Faragher v. City of Boca

Raton, 524 U.S. 775, 807 (1998).  Thus, I cannot conclude that there is no basis for respondeat

superior liability as a matter of law.  Accordingly, defendant's motion for summary judgment on

plaintiff's hostile work environment claim based on national origin will be denied and its motion

---

[4] Defendant argues that plaintiff has failed to present evidence that any of the alleged
comments or conduct directed toward him were motivated by his race or national origin.  In
support of its argument, defendant cites Pasic v. Eztzi's Texas Holding Corp., 2002 WL
31938854, at *3 (S.D. N.Y. Jan. 9, 2002).  The Pasic Court granted summary judgment to the
defendants on the plaintiff's hostile work environment claims based on religion and national
origin, finding that the several alleged comments by the defendant to the plaintiff about being
from a communist nation could not form the basis of a claim because the terms denoted a
generalized political affiliation, not a specific national origin.  Pasic, 2002 WL 31938854, at *3.
However, Pasic is distinguishable because here the comments specifically referred to plaintiff's
national origin as Filipino.

for summary judgment on plaintiff's hostile work environment claim based on race will be granted.

III.     Retaliation

Plaintiff alleges that defendant retaliated against him in violation of Title VII.  Title VII protects individuals who engage in protected conduct from retaliation by their employers by stating that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful practice by this subchapter . . . ."  42 U.S.C. § 2000e-3(a).  In order to establish a prima facie case of retaliation under Title VII, plaintiff must show that:  (1) he engaged in a protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.  Cardenas, 269 F.3d at 263.[5]

Conduct constituting protected opposition to discrimination "can take the form of informal protests of discriminatory employment practices."  Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007), internal quotation and citations omitted.  Accepted methods of opposition include making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general and expressing support for coworkers who have filed formal charges.  Barber v. CSX Distrib. Serv., 68 F.3d 694, 702 (3d Cir. 1995), citing Sumner v. U.S.

_____

[5]  If plaintiff succeeds in producing sufficient evidence to establish a prima face case, the retaliation claim is subject to the McDonnell Douglas burden-shifting analysis.  Mroczek v. Bethlehem Steel Corp., 126 F. Supp.2d 379, 387 (E.D. Pa. 2001).  Defendant must then articulate a legitimate, non-discriminatory reason for taking the employment action in question.  Id. Defendant's burden at this stage is relatively light; it need not prove that the articulated reason actually motivated the discharge.  Fuentes, 32 F.3d at 763.  Upon doing so, the burden then returns to plaintiff to establish that the employer's explanation is pretextual.  Mroczek, 126 F. Supp.2d at 387.

Postal Serv., 899 F.2d 203, 209 (2d Cir. 1999).  Plaintiff must, however, provide some indication that he is opposing an employment practice that he perceives to be unlawful under Title VII.  See id.  "A general complaint of unfair treatment does not translate into a charge of illegal [race or national origin] discrimination."  Id.  The complaint must "explicitly or implicitly allege that [plaintiff's protected class status] was the reason for the alleged unfairness."  Id.  In determining whether plaintiff has engaged in opposition conduct, I must look to the message being conveyed rather than to the means of conveyance.  Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006).

In Barber, the Court of Appeals held that an employee did not engage in a protected activity when he wrote a letter complaining about unfair treatment in general and the fact that someone "less qualified" was awarded the desired position.  Id. at 701-02.  The letter was too vague to constitute opposition to unlawful discrimination because it did not explicitly or implicitly allege that age was the reason for the alleged unfairness.  Id. at 702.  The Court concluded that such a general complaint of unfair treatment does not translate into a charge of illegal discrimination.  Id.; see also Slagle v. County of Clarion, 435 F.3d 262, 267 (3d Cir. 2006), holding that a plaintiff is not engaged in a protected activity when he files an EEOC charge that fails to allege that his employer violated Title VII.

Here, plaintiff has provided no evidence that he was opposing a violation of Title VII when he allegedly complained to Philipose.  Plaintiff was first employed by defendant in 1992, Philipose was hired as his supervisor shortly thereafter and plaintiff allegedly began to complain to Philipose in 2004.  He testified that he complained to Philipose weekly beginning in 2004.  Plaintiff admits that he never filed a written complaint and never complained to anyone other than

20

Philipose who did not report plaintiff's complaints to anyone else at defendant Zober for an investigation and possible discipline.  Although plaintiff's response brief argues that plaintiff complained to Philipose weekly to stop discriminating against him and to call him by his real name, the record evidence does not support that plaintiff explicitly or implicitly complained about discrimination based on his race or national origin.  In plaintiff's deposition, nothing suggests that his complaints were anything more than general complaints of unfair or disrespectful treatment.

Plaintiff testified in his deposition that, when Philipose referred to him as "Filipino," he would complain to Philipose that he had a name and would ask him to please call him by it.  For example, he alleges that he complained to Philipose that "I have a name, call me my own name, why do you have to say like Philippino, Philippino [sic].  You know, I'm just tired of hearing, I told him, Matthew, I'm tired of hearing you saying Philippino, Philippino [sic], what do you mean, all Philippino [sic] people, I don't know they did some Philippine to you from the past, I don't know, why are you always talk about like Philippino, Philippino [sic], I got my own name."  Additionally, plaintiff testified that he complained about John Antony getting a better review and salary by asking Philipose "how come you gave [Antony] more than I do, don't you think I should deserve to get some good review, too, because I know I been here long time, you put me everywhere, you have no problem to give me any department and I can do the job right away."  He also testified about complaining about his salary to Philipose by stating "how come you give me this review, why didn't you give me a little bit higher . . . ."  Although plaintiff testified that his complaints where based on what he felt was discriminatory conduct towards him, his actual complaints are vague and provide no indication that he was complaining about discrimination based on his race or national origin.  See Gharzouzi v. Northwestern Human Services of Penn.,

21

225 F. Supp.2d 514, 540 (E.D. Pa. 2002), holding that "[t]he complaint must specifically mention the plaintiff's belief that he/she was discriminated against on account of his/her membership in some protected class"; Dodd v. Septa, 2008 WL 2902618, at *13 (E.D. Pa. July 24, 2008), finding that the plaintiff implicitly connected the unfair treatment to his race because he complained that he was harassed because of his hair and stated that his hair style is popular with the Afro-American community.  The message conveyed is determinative and plaintiff's comments to Philipose complained at best about disrespectful or unfair treatment or that Philipose had personal animus against Filipinos.  See Curay-Cramer, 450 F.3d at 137, holding that the objective message conveyed is determinative not the subjective intent of the person sending the message.  Like the complaint in Barber,[6] plaintiff's general complaints of unfair treatment fail to create a genuine issue of material fact as to whether plaintiff engaged in protected activity.  Because plaintiff has not produced evidence sufficient to satisfy the first element of his prima facie case, I will grant defendant's motion for summary judgment on plaintiff's retaliation claim.

    IV.    Punitive Damages

    An employer may be liable for punitive damages under § 1981 or Title VII where a claimant can show that an employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1); Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534, 536

---

    [6]  The Barber Court was applying the anti-retaliation provision of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA").  The Court, however, stated that the anti-retaliation provision of the ADEA is "analogous" to that of Title VII.  Id. at 702.  The Court of Appeals has more recently stated that "[t]he ADEA's provision against retaliatory discharge is identical to that of Title VII."  Slagle, 435 F.3d at 266.  Thus, I may appropriately apply the reasoning from Barber to this case.

(1999).  The terms "malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law not to its awareness that it is engaging in discrimination. Id. at 535.

Plaintiff alleges that he specifically pleaded in his complaint that defendant engaged in willful, deliberate, malicious and outrageous conduct and that defendant acted with malice or with reckless indifference to his federally-protected rights.  To support this allegation, plaintiff references the fact that Philipose allegedly made comments about plaintiff's national origin and his accent, Philipose allegedly discipline of plaintiff in the presence of other employees and Philipose allegedly denied him a promotion and terminated him based on his race and national origin.  Plaintiff argues that defendant took no action to protect plaintiff's rights because it did not discipline Philipose or investigate plaintiff's complaints.

Viewing the evidence in the light most favorable to the non-moving party, plaintiff's allegations are deficient with respect to punitive damages.  Plaintiff has not alleged that defendant was aware of plaintiff's federally protected rights or that defendant acted with a perceived risk that its conduct violated federal law.  Although plaintiff has provided evidence that might support his allegation that Philipose discriminated against him, he fails to present any evidence that defendant acted with malice or with reckless indifference in regard to his federally-protected right.  Further, plaintiff only allegedly complained to Philipose about his conduct but never complained to anyone else in management about Philipose to provide any justification for such a finding.  Therefore, defendant's motion for summary judgment on plaintiff's punitive damages claim will be granted.

An appropriate Order follows.